**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| **THE OHIO STATE UNIVERSITY** | **:** | | |
| | **:** | | |
| **Plaintiff,** | **:** | | |
| | **:** | **Case No.:** | |
| | **:** | | |
| | **:** | **Judge:** | |
| **SUNFROG, LLC** | **:** | | |
| | **:** | | |
| **Defendant.** | **:** | | |

**COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION,**
**PASSING OFF, AND COUNTERFEITING**

Plaintiff The Ohio State University ("Ohio State"), for its Complaint against defendant

SunFrog, LLC ("SunFrog") ("Defendant"), states as follows:

**Nature of the Case**

1.       This is an action for trademark infringement, unfair competition, passing off,

counterfeiting under the Lanham Act, 15 U.S.C. § 1114 and § 1125(a), relating to the unlawful

appropriation of Ohio State's registered and common law trademarks by Defendant in its sale of t-

shirts and other merchandise online.

2.       Plaintiff Ohio State is a public institution of higher education, with its main

campus located in Columbus, Ohio, and regional campuses across the state.  The University is

dedicated to undergraduate and graduate teaching and learning; research and innovation; and

statewide, national, and international outreach and engagement.  Both undergraduate and graduate

students also connect with the University and broader community through an array of leadership,

service, athletic, artistic, musical, dramatic and other organizations and events.

3. Upon information and belief, Defendant SunFrog is a limited liability company organized under the laws of the State of Michigan, with a principal place of business at 1782 O'Rourke Blvd., Gaylord, Michigan 49735.

4. This court has jurisdiction over this matter under 15 U.S.C. § 1125 and 28 U.S.C. § 1338. Venue is proper in this Court under 28 U.S.C. § 1391(b), as Ohio State's cause of action arose and Ohio State is being injured in this judicial district, and because Defendant is doing business in this forum and targeting customers in this forum to purchase its infringing and counterfeit products.

**The Ohio State Trademarks**

5. Established in 1870, The Ohio State University has developed into one of the most well-respected institutions of higher learning in the country.

6. For more than 140 years, Ohio State has been actively engaged in providing undergraduate and graduate level educational courses and a broad array of programming and events, including sports events, recreation programs, and artistic, dramatic, and musical entertainment programming. The University also operates a medical center that has grown into one of the largest patient-care and medical-research centers in the nation. Ohio State licenses and markets various products and services, including publications, clothing, and other merchandise using the Ohio State Trademarks.

7. In connection with the activities and products described in the preceding paragraphs, Ohio State is the owner of, among others, the following federally registered trademarks:

    a. "BUCKEYES" — registration number 1,152,683, registered April 28, 1981, to provide college sport exhibition events and recreation programs;

    b. "BUCKEYES" — registration number 1,267,035, registered on February 14, 1984 for use on: toy stuffed animals, Christmas decorations, bean bags, plastic

toys, foam toys and equipment sold as a unit for playing a stick ball game;
clothing-namely, T-shirts, ties, scarves, bibs, sweatshirts, athletic shorts, hats,
aprons, jogging suits and sweaters; blankets, textile placemats, handkerchiefs,
quilts and pennants; tumblers, cups, mugs, glasses and insulated beverage container
holders; hassocks, bean bag leisure furniture, letter holding boxes, mirrors, and
folding seats for use by individuals in athletic stadiums and plaques; tote bags;
pens, posters, decals, and paintings; jewelry-namely, rings, pins, belt buckles  and
key chains, all being made of precious metal; electric lamps; providing
college level educational programs, sport exhibition events and recreation
programs;

c. BUCKEYE DESIGN — registration number 2,437,954, registered January 2,
2001 for use on decals and stickers;



d. "OHIO STATE" — registration number 1,294,114, registered September 11,
1984 for providing college level educational programs, sport exhibition
events, recreation programs, toy stuffed animals, Christmas decorations, bean
bags, plastic figurine toys, foam figurine toys, bats, balls and other equipment
sold as a unit for playing a stick ball game, shoe laces, t-shirts, ties, scarves,
bibs, sweatshirts, shorts, hats, aprons, jogging suits, sweaters, blankets,
pennants, textile placemats, handkerchiefs, quilts, tumblers, cups, mugs,
glasses, beverage container insulators, hassocks, bean bag leisure furniture,
mirrors, and folding seats for use by individuals in athletic stadiums, tote bags,
pens, posters, decals, paintings, letter holding boxes, rings, pins, belt buckles,
key chains and electric lamps;

e.  "OHIO STATE" — registration number 1,152,682, registered April 28, 1981 for
college sport exhibition events and recreation programs, dramatical and musical
entertainment events and college level educational courses;

f.  "OSU" — registration number 1,121,595, registered July 3, 1979 for college
sport exhibition events and recreation programs, dramatical and musical
entertainment events and college level educational courses;

g.  "OHIO STATE UNIVERSITY" — registration number 1,294,115, registered
September 11, 1984 for jewelry-namely, rings, pins, belt buckles and key chains;
pens, posters, decals, paintings, letter holding boxes; hassocks, bean bag leisure
furniture, plaques, mirrors and folding seats for use by individuals in athletic
stadiums; tumblers, cups, mugs, glasses and beverage container insulators; blankets,
pennants, textile placemats, handkerchiefs and quilts; clothing-namely, t-shirts,
ties, scarves, bibs, sweatshirts, shorts, hats, aprons, jogging suits and sweaters; toy
stuffed animals, Christmas decorations, bean bags, plastic figurine toys, foam
figurine toys, and equipment-namely, bats and balls sold as a unit for playing a
stick ball game; and : providing college level educational programs, sport
exhibition events and recreation programs;

3

h.          – registration number 2,689,612, registered February 25, 2003 for clothing, namely, jackets, sweaters, hats and T-shirts.

i.          "SCARLET & GRAY" – registration number 3,173,656, registered November 21, 2006 for hats, shirts, and t-shirts



j.          "OHIO STATE" – registration no. 2,094,602, registered September 9, 1997 for clothing items for men, women and children, namely, sweatshirts, T-shirts and sweaters



k.          Registration no. 4104956, registered February 28, 2012 for Apparel for dancers, namely, tee shirts, sweatshirts, pants, leggings, shorts and jackets; Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; Children's and infant's apparel, namely, jumpers, overall sleepwear, pajamas, rompers and one-piece garments; Children's and infants' apparel treated with fire and heat retardants, namely, jumpers, overall sleepwear, pajamas, rompers and one-piece garments; Gloves for apparel; Infant wearable blankets; Scientific and technological apparel, namely, shirts, pants, jackets, footwear, hats and caps, uniforms; Viscous gel polymer sold as a component of finished custom cushioned footwear for non-orthopedic purposes and apparel; Wearable blankets in the nature of blankets with sleeves; Wearable garments and clothing, namely, shirts.

4



l.      Registration no. 5117747, registered January 10, 2017 for clothing, namely, football jerseys



m.      Registration no. 4971894, registered June 7, 2016, for clothing and headgear, namely, t-shirts, shirts, sweatshirts, hoodies, hats and caps.

8.      Copies of the certificates of registration for each of these trademarks are attached hereto as Exhibit A.

9.      The certificates of registration identified in the preceding paragraph are valid and subsisting, and Ohio State has record title in the trademarks described above.

5

10.     The certificates of registration are prima facie evidence of the validity of the registered trademarks, Ohio State's ownership of the registered trademarks, and Ohio State's exclusive right to use the registered trademarks in connection with the goods and services specified in the certificates of registration enumerated above. The registered marks set forth in paragraph 7(a) -- (h) and (j) are incontestable, which provides conclusive evidence of their validity under 15 U.S.C. § 1115(b), and constructive notice of the registrant's claim of ownership under 15 U.S.C. § 1072.

11.     In addition, Ohio State owns common law trademarks in the distinctive use of its school colors, scarlet and gray, and in the use of the capital letter "O" in block text in conjunction with the school colors, the stripe pattern on the center of Ohio State's football helmet and in the cheer "O-H-I-O", among others.  Indeed, Ohio State maintains a website exclusively devoted to the O-H-I-O cheer, performed by students, alumni and friends of Ohio State from places as far away as Toledo, Spain, Western Wall in Jerusalem, Melbourne, Australia and a game preserve in Kenya, http://www.osu.edu/O-H-I-O  An example is the following performance of O-H-I-O in front of the Sydney, Australia opera house:



12.     A simple search of the website www.youtube.com displays hundreds of examples

of people performing the O-H-I-O cheer, and all of them are associated entirely and exclusively with Plaintiff, The Ohio State University.

13.     A "Google" search of "O-H-I-O cheer" or "O-H-I-O chant" likewise turns up dozens of hits all referring to Plaintiff, while a search in Google "images" turns up more examples of uses of the "O-H-I-O" cheer, including on products licensed by Plaintiff, including printed matter, holiday ornaments, puzzles, wall hangings and the O-H-I-O licensed decal, depicted below:



14.     In connection with the promotion of its various academic, athletic, entertainment and philanthropic activities, Ohio State has also historically used, as a trademark, the Block O as well as a Block O with Buckeye Leaves:



15.     Ohio State's use of the Block O has been continuous since 1898 and use of the Block O with Buckeye Leaves trademark has been continuous since 1973 and the public now

associates the Block O trademarks solely as indicating origin in Ohio State.

16.    Since 1878 Ohio State's official school colors have been scarlet and gray with scarlet being the predominant color, and those colors have been used on all things Ohio State.

17.    Ohio State has used the registered trademarks and the common law trademarks described above (collectively the "Ohio State Trademarks") continuously and exclusively for identification with Ohio State and its academic, athletic and entertainment activities. The Ohio State Trademarks and their respective reputation and goodwill have continuously grown and are now well known throughout the City of Columbus, the State of Ohio and the United States.

18.    Ohio State's athletic teams and students have been known as "Buckeyes" since at least as early as 1920.  Due to the long, extensive and continuous use of the term "Buckeye" in association with Ohio State teams, programs, and events, consumers now associate the term Buckeye with Ohio State.  When used in connection with Ohio State athletics or other Ohio State Trademarks (for example, in the colors scarlet and gray), the term "Buckeye," as well as the other Ohio State Trademarks are strong and readily accepted by the public as hallmarks of Ohio State athletics.

19.    Ohio State licenses and markets many items using the trademarks "Buckeye", "Buckeyes", Block O, Block O with Buckeye Leaves, "Go  Bucks", the Ohio State Athletic Logo, "O-H-I-O", "OSU", the stripe pattern on the center of Ohio State's football helmet and the decal "Buckeye Leaf," which have been placed on the helmets of Ohio State football players for making an excellent play for more than 40 years.



20. Ohio State's academic and athletic programs rank among the best in the nation. Ohio State's undergraduate program and graduate programs for law, medicine, business, engineering and education are all currently ranked among the top 40 schools in the nation in their respective areas by U.S. News & World Report.

21. Ohio State alumni have an affinity for Ohio State that runs deep and these Buckeyes can be found in every corner of the country. There are approximately 464,000 Ohio State alumni located in virtually every country throughout the world. When consumers throughout the nation (or world) hear the word "Buckeye" in connection college athletics, hear the words *Buckeye Battle Cry* or the fight song, or see the words "Buckeye Battle Cry", or the O‑H‑I–O cheer, they immediately associate that phrase as indicating origin with Ohio State and its athletic teams and band.

22. In 2002, the Ohio State football team, the Buckeyes, won the NCAA football championship. This was the seventh national football championship for the Buckeyes. Only five other programs in the history of collegiate football have amassed more than seven national championships.

23. In the 2006 — 2007 athletic year, Ohio State Buckeye teams appeared in both the NCAA Football National Championship and the NCAA Final Four and championship basketball games. This success again cemented the presence of the Ohio State marks on a national stage, making goods bearing the Ohio State marks even more sought after and desired.

24. In 2008, the Buckeyes again played for the national championship of college football in the BCS National Championship Game. In 2009, the Buckeyes played in the BCS-Fiesta Bowl, and in January 2010, the Buckeyes defeated Oregon in the BCS Rose Bowl. In 2014, the Buckeyes won their 8th national championship and became the undisputed national champions in the first ever College Football Playoff ("CFP"), defeating Oregon to win the CFP National Championship Game. Recently, twelve (12) Ohio State football players were drafted in the 2016 NFL draft, including three (3) players in the top ten (10) picks of the draft. In 2017, Ohio State was once again selected to play in the CFP.

25. As a result of Ohio State's fame and its extensive use, advertising, and sale of goods and performance of athletic services bearing the Ohio State Trademarks, the Ohio State Trademarks have acquired strong secondary meaning, have achieved favorable national recognition, and have become assets of significant value as symbols pointing only to Ohio State, its services, products and goodwill.

26. Ohio State approves and maintains quality control over all of the products and services it licenses and produces, the goods and services bearing its marks, and its trade dress to protect the tradition, prestige and goodwill associated with these marks, and Ohio State makes systematic efforts to safeguard the quality and integrity of the Ohio State marks, and the public assumes that Ohio State has approved, sponsored or endorsed all products and services bearing its trademarks.

27. For more than thirty-five (35) years, Ohio State has both used and licensed third parties to use the Ohio State Trademarks on various items and services, including clothing of all

types, food products, restaurant services, internet websites, screen savers, athletic uniforms, calendars, novelties, books, household goods, toys, sporting goods, music, home furnishings, glassware, collectibles, pens and watches.

28.     Ohio State's licensing program is one of the most profitable collegiate licensing programs in the United States.  Ohio State's licensing program has generated substantial royalty revenue to Ohio State.  Royalties derived from the commercial use of Ohio State's Trademarks directly benefit Ohio State students by funding a variety of scholarships and programs.  The past success of Ohio State's academic and athletic programs has resulted in extensive exposure of the Ohio State Trademarks to a national audience and has created a large demand for products and services bearing the Ohio State Trademarks throughout the United States.

29.     In fact, Ohio State currently has more than four hundred (400) authorized licensees for products using the Ohio State Trademarks on all types of clothing products, including shirts, food products and services, such as ice cream, breakfast cereals, popcorn snacks, pretzel snacks, tortilla chips, cinnamon cracker snacks, gourmet candies, hot dogs, cafés and restaurants, to computer equipment, such as screen savers, mouse pads, and wrist rests, hats, flags and banners.

30.     Defendant is not and has not been licensed by Ohio State to use the Ohio State Trademarks on any products or services.

**Defendant's Infringing Use and Counterfeiting of the Ohio State Trademarks**

31.     Defendant is in the business of printing and selling t-shirts with a wide variety of designs.  Upon information and belief, Defendant has online tools that permit its customers to create and upload infringing and counterfeiting designs, and start a "campaign" on Defendant's website.  The designs printed by Defendants are submitted to them or created online using Defendant's design tools at Defendant's website, http://SunFrog.com/ .  SunFrog also has a

Facebook page, https://www.facebook.com/SunFrogShirts, where it advertises and promotes counterfeit Ohio State products. According to SunFrog's website, SunFrog pays its customers for every shirt sold, and the submitted designs remain available online for as long people are interested in purchasing them. Defendant also has its "SunFrog Academy", which instructs its customers on how to market their designs (which are printed and shipped by SunFrog to consumers) on social medial, including how to set up Facebook fan pages and how to use keyword advertising on Facebook.

32.    Defendant is well aware of the Ohio State Trademarks and Ohio State's use of the Ohio State Trademarks on clothing items. Ohio State contacted Defendant on September 15, 2014 (copy attached to Complaint as Exhibit B) and objected about a t-shirt design infringing on Ohio State's Trademarks, demanded that Defendant remove infringing items from the SunFrog.com website and police the website so that it would not continue to offer, produce and sell t-shirts that are either infringing of or counterfeits of the Ohio State Trademarks. On September 19, 2014, SunFrog's Chief Counsel, Kirk Yodzevicis, responded (copy attached to Complaint as Exhibit C) regarding these "copyright" issues, claiming that SunFrog had recently put "gatekeepers" in place to look at each design that is uploaded by SunFrog's customers, and that the shirt printers employed by SunFrog were "the last line of defense against infringing designs." Mr. Yodzevicis concluded, "I would say that the usage of 'Ohio State Buckeyes' would have been pulled, had a design gotten to that point since our training and policy went into place approximately 6 weeks ago."

33.    Despite these reassurances made more than two years ago, infringing and counterfeit designs continued to be uploaded to the SunFrog platform, and printed and distributed by SunFrog. Outside counsel for Ohio State contacted SunFrog on February 4, 2015 to complain of additional infringing and counterfeit designs, and Mr. Yodzevicis responded (copy attached to Complaint as Exhibit D),  once again claiming that SunFrog had screening systems in place and assuring Ohio State

12

that SunFrog would remove any infringing design so long as Ohio State brought it to its attention.

34.     Again, assurances regarding its screening systems notwithstanding, Ohio State

contacted SunFrog on August 1, 2016 (copy attached to Complaint as Exhibit E) to complain  about



yet another blatant counterfeit of the Ohio State Trademarks:

Ohio State reiterated its position that it does not have "the resources to monitor every online promoter,

manufacturer or seller of goods but it expects that such businesses have systems in place to prevent the

advertising and sale of such blatant counterfeit products."   However, SunFrog has not stopped the

activity and SunFrog continues to solicit orders for, manufacture, sell and ship infringing and

counterfeit products using the Ohio State Trademarks.

35.     Below are examples of infringing merchandise using the Ohio State Trademarks

that have been displayed and offered for sale on the SunFrog.com website and/or by its affiliates on

various Facebook fan pages and other social media:

An "affiliate" page on the SunFrog website:



Items appearing on the sunfrog.com website:

















Infringing merchandise purchased by Counsel for Ohio State on January 24, 2017:





36.     Defendant's unauthorized use of the Ohio State Trademarks is commercial in nature and is intended to, and will, directly compete with the lawful publication, distribution, sale and advertising activities of Ohio State and its licensees to the detriment of Ohio State.

## COUNT ONE
## INFRINGEMENT OF REGISTERED TRADEMARKS UNDER 15 U.S.C. § 1114

37.     Ohio State incorporates the allegations contained in paragraphs 1 through 36 as if fully restated herein.

38.     The commercial use of Ohio State's registered Ohio State Trademarks on t-shirts and other merchandise by Defendant as described above is a willful infringement of the registered Ohio State Trademarks, and such commercial use was with knowledge of and intended to trade off of Ohio State's prior rights to the Ohio State Trademarks.

39.     Defendant's solicitation, manufacture, displaying for sale, sale and shipment of infringing merchandise that uses the Ohio State Trademarks creates a likelihood of confusion as to the affiliation, connection, association or sponsorship, affiliation or endorsement by Ohio State in an appreciable number of college athletics consumers and potential consumers.

40.     The Ohio State Trademarks, as described herein, are very strong in the context of licensed merchandise bearing the Ohio State Trademarks.

41.     The relatedness, or similarity, between Ohio State licensed products and Defendant's infringing merchandise point to a high likelihood of confusion.  Consumers interested in purchasing Ohio State apparel are likely to believe that Defendant's merchandise come from the same source, or are somehow connected with or licensed by Ohio State.

42.     The goodwill of the Ohio State Trademarks is of enormous value, and Ohio State is suffering and will continue to suffer irreparable harm should Defendant's unauthorized offering to manufacture, manufacturing, selling and shipping of the infringing merchandise continue.

43.     Defendant's use of the Ohio State Trademarks on the infringing merchandise has continued and will continue unless enjoined by this Court.

44.     Ohio State is  entitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

## COUNT TWO
## UNFAIR COMPETITION AND PASSING OFF UNDER 15 U.S.C. § 1125(a)

45.     Ohio State incorporates the allegations contained in paragraphs 1 through 44 as if fully restated herein.

46.     Defendant's offering to manufacture, manufacturing, selling and shipping of merchandise bearing the Ohio  State  Trademarks  that  competes directly with Ohio State's

licensed apparel products will likely cause confusion, mistake or deception on the part of persons interested in purchasing Ohio State apparel as to the origin, sponsorship or approval by Ohio State of the Defendant's infringing merchandise in violation of 15 U.S.C. Section 1125(a).

47.     Upon information and belief, Defendant's unfair competition and passing off has been willful and deliberate, designed specifically to trade upon the consumer goodwill created and enjoyed by Ohio State for Defendant's profit.

48.     Ohio State's consumer goodwill is of enormous value, and Ohio State is suffering and will continue to suffer irreparable harm if Defendant's unfair competition and passing off as to the infringing merchandise is allowed to continue.

49.     Defendant's unfair competition and passing off has continued and will likely continue unless enjoined by this Court.

50.     Ohio State is entitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including but not limited to compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

**COUNT THREE**
**COUNTERFEITING UNDER 15 U.S.C. §1114**

51.     Ohio State incorporates the allegations contained in paragraphs 1 through 50 as if fully restated herein.

52.     Defendant, without authorization from Ohio State, has offered to manufacture, manufactured, sold and shipped t-shirts, as described above, that display counterfeits or colorable imitations of federally registered Ohio State Trademarks on clothing products.

53.     Defendant's actions are intended to cause, have caused and are likely to continue to cause confusion, mistake and deception among consumers, the public and Ohio State's licensees as to

21

whether Defendant's infringing and counterfeit merchandise originates from or is affiliated with, sponsored by, licensed by or endorsed by Ohio State.

54. Defendant has acted with knowledge of Ohio State's ownership of the Ohio State Trademarks and with deliberate, willful intention to trade upon the consumer goodwill created and enjoyed by Ohio State for Defendant's profit.

55. Defendant's acts constitute trademark counterfeiting in violation of 15 U.S.C. Sections 1114 & 1116. Defendant's continued and intentional acts of trademark counterfeiting, despite repeated warnings and complaints from Ohio State, make this an exceptional case, entitling Ohio State to its reasonable attorney fees under 15 U.S.C. Section 1117(a).

56. The goodwill of the Ohio State Trademarks is of enormous value, and Ohio State is suffering and will continue to suffer irreparable harm should Defendant's unauthorized offering to manufacture, manufacturing, selling and shipping of the counterfeit merchandise continue.

57. Defendant's use of the Ohio State Trademarks on the counterfeit merchandise will continue unless enjoined by this Court.

58. Ohio State is e ntitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, statutory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

**WHEREFORE**, Ohio State requests that the Court order:

1. The issuance of a permanent injunction enjoining Defendant and its agents, servants, employees, successors, representatives and assigns, and all others in concert and privity with them from infringing, falsely designating the origin of the Ohio State Trademarks, and from passing off Defendant's products using Ohio State's Trademarks, from using the Ohio State Trademarks in commerce in any way, and from injuring Ohio State's reputation;

2.   That Defendant account to Ohio State for its profits, the actual damages suffered by Ohio State as a result Defendant's acts of infringement, unfair competition and passing off, together with interest and costs, and that such damages be trebled because of the willful acts described above, which acts were committed in knowing disregard of Ohio State's known rights;

3.   That Defendant collect from its customers and affiliates and surrender all merchandise that bears any of the Ohio State Trademarks;

4.   That Defendant pay statutory damages of $1,000,000 per counterfeit mark per type of product sold, offered for sale, or distributed in accordance with 15 U.S.C. Section 1117;

5.   That Defendant pay compensatory and treble damages to Ohio State;

6.   That Defendant disgorges all profits realized from the sale of merchandise that bears any of the Ohio State Trademarks;

7.   That the Court determine this case to be "exceptional" and order Defendant pay Ohio State's attorneys' fees, together with the costs of this suit; and

8.   All other and further relief as may be just and equitable.


Respectfully submitted,

Michael DeWine
Ohio Attorney General


Joseph R. Dreitler, Trial Attorney (0012441)
Mary R. True   (0046880)
DREITLER TRUE LLC
19 East Kossuth Street
Columbus, OH  43215
(614) 449-6640 (telephone)
jdreitler@ustrademarklawyer.com
mtrue@ustrademarklawyer.com


Special Counsel for Plaintiff
The Ohio State University